UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE B. SCRUGGS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:12CV01442 ERW |
| ) | |
| AMALGAMATED TRANSIT UNION ) | |
| LOCAL 1700, and ) | |
| BRUCE HAMILTON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants Amalgamated Transit Union Local 1700's ("Union") and Bruce Hamilton's ("Hamilton") Motion to Dismiss [ECF No. 27]. Union and Hamilton collectively will be referred to as "Defendants."

## I. PROCEDURAL AND FACTUAL BACKGROUND

On August 8, 2012, Plaintiff Stephanie B. Scruggs ("Plaintiff") filed this employment discrimination lawsuit against Union, and against Hamilton, Union's President [ECF No. 1]. Service was effected on Defendants on January 2, 2013 [ECF Nos. 20, 21]. The Court granted Defendants an extension of time to respond to Plaintiff's Complaint, directing them to answer or otherwise respond no later than February 14, 2013 [ECF Nos. 19, 24]. On that date, Defendants filed this Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), asserting that Plaintiff's Complaint fails to state a claim upon which relief may be granted, because, although it purports to allege a claim for racial discrimination, based on the duty of fair representation, the Complaint does not identify facts that would allow the Court to draw the reasonable inference that Union or Hamilton are liable for the alleged misconduct [ECF Nos. 27, 28, 29].

Upon review of the record on March 19, 2013, the Court found that Plaintiff had failed to file a Response to Defendants' Motion to Dismiss, and ordered Plaintiff to show cause, no later than March 29, why the Motion should not be granted [ECF No. 30].  On March 26, Plaintiff filed a Response [ECF No. 31].  Defendants filed their Reply on April 2, 2013 [ECF No. 32].

In her Complaint, Plaintiff, an African American, alleges that her lawsuit is based on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., for employment discrimination on the basis of race.  Plaintiff further claims Union failed to represent her by not taking her case to arbitration in spring 2012 [ECF No. 1 at 5].  She states that the Union vice-president working on her case died, and she "never heard a word since," although she kept calling the union representative [ECF No. 1 at 5].  Plaintiff further alleges that when she called Hamilton directly to find out why her case was not going to be arbitrated, he "did not give a good reason[.]" [ECF No. 1 at 5].  Plaintiff states, "It[']s not fair that everybody else goes to arbitration and mines (sic) does not" [ECF No. 1 at 5].

In the Charge of Discrimination she filed with the Missouri Commission on Human Rights (the "MCHR Charge"), Plaintiff reported that she filed a grievance against her employer, Greyhound Lines ("Greyhound"), with Union, due to her termination [ECF No. 1-1 at 2]. Plaintiff further alleged that her union steward represented her during three grievance steps, but she was unable to get her former job back [ECF No. 1-1 at 2].  Plaintiff claimed that sometime around November of 2011, she was informed by a union representative that her grievance was going to be referred to arbitration [ECF No. 1-1 at 2].  Plaintiff asserted that Hamilton informed her that her grievance would not proceed to arbitration, during a telephone conversation on July 9, 2012, and that he sent her a letter, dated July 11, 2012, to reiterate their telephone discussion [ECF Nos. 1-1 at 2, 1-2 at 1].

2

Plaintiff submitted copies of several letters as exhibits to her Complaint, including the July 11th correspondence she received from Hamilton. Hamilton's letter indicated that Union's executive board voted not to proceed with Plaintiff's grievance, "after lengthy deliberation and with advice from the union's attorney" [ECF No. 1-2 at 1].

Plaintiff's exhibits include a letter to Union's vice president, dated April 2, 2011, written by Greyhound's St. Louis operations supervisor stating why Plaintiff's grievance was being denied [ECF No. 1-2 at 8]. According to this supervisor, Plaintiff was terminated from Greyhound due to an incident in which Plaintiff, who had been driving a bus full of passengers, left her bus, upon its arrival in Columbia, Missouri, and entered the agency terminal. The letter stated that, upon her return to the bus, Plaintiff sat in her driver's seat, and noticed it was wet [ECF No. 1-2 at 8]. The letter further indicated the following facts. Police were called to the agency. The responding police officer approached the bus Plaintiff had been operating, and found passengers inside, knocking on the bus's locked door. During questioning by the police officer, multiple passengers reported the temperature inside the bus was extremely hot, Plaintiff would not adjust the temperature, and they had been locked in the hot bus and could not exit. The letter indicated that when Plaintiff was interviewed following this incident, she told management personnel that she did not lock the bus, and that the heat on the bus had been mild.

According to this letter, when management personnel thereafter interviewed the responding officer, the police officer stated the bus door was locked when he arrived, and the bus was very hot inside when he entered it. The police officer further reported he felt the driver's seat to determine if it was wet, but found the seat being only what it would be from the normal heat of the driver. In this letter, the operations supervisor opined the "manner in which this

3

incident was handled [by Plaintiff] was unprofessional and the interview conducted of [Plaintiff] was found to be less than truthful."

Plaintiff's submitted exhibits also include a May 20, 2011 letter written by Greyhound's city manager to Union's vice president [ECF No. 1-2 at 6-7]. In this letter, Greyhound's city manager discussed a third level grievance hearing on Plaintiff's termination, during which a video taken by one of the bus passengers at the time of the Columbia incident was played. The letter documented that Union's representative objected to the showing of the video, and the representative and Plaintiff subsequently refused to continue the grievance proceeding, despite the readiness of available witnesses to testify. Greyhound's city manager concluded he considered the refusal to be improper and unprofessional, and stated the grievance remained denied.

## II. LEGAL STANDARD

A party may move under Rule 12(b)(6) to dismiss a complaint for "fail[ing] to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test "the sufficiency of a complaint[.]" *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir.

2010). However, if a claim fails to allege one of the elements necessary to recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001).

## III. DISCUSSION

In their "Memorandum in Support of Motion to Dismiss," Defendants assert that Plaintiff's Complaint should be dismissed for failure to state a claim upon which relief may be granted, and for failure to exhaust administrative remedies [ECF No, 28]. They contend that, although it purports to allege a claim for racial discrimination, based on the duty of fair representation, the Complaint does not identify facts that would allow the Court to draw the reasonable inference that Union or Hamilton are liable for the alleged misconduct. More specifically, Defendants argue that Plaintiff's Complaint should be dismissed for five reasons.

First, Defendants contend Plaintiff's Complaint identifies no basis for her claim, and the MCHR Charge, submitted as an exhibit to the Complaint, asserts only a claim for breach of the duty of fair representation. They argue that, by neglecting to assert a Title VII claim in the administrative charge, Plaintiff failed to exhaust her administrative remedies. Second, Defendants assert that the MCHR Charge names only the Union as a respondent, and they contend that Plaintiff's failure to name Hamilton in the charge bars her naming him as a defendant in this action. Third, Defendants contend Plaintiff has alleged no facts that would allow the Court reasonably to infer Union did not arbitrate her grievance because of her race. Fourth, Defendants argue that Plaintiff's Title VII claim against Hamilton must be dismissed because the statute does not provide for individual liability. Finally, Defendants claim Plaintiff's Complaint should be dismissed because Plaintiff previously has sought the same relief against Defendants for the same alleged incident, and she cannot recover twice for the same alleged

5

injury. Defendants state that this is one of three lawsuits Plaintiff has filed based on the incident, reporting that she also has sued Greyhound for wrongful discrimination (Case No. 4:12CV1443); and Greyhound, Union, and Hamilton for failure of representation (Case No. 4:12CV2080).

Defendants argue alternatively that the Court should require Plaintiff to submit a more definite statement in accordance with Fed. R. Civ. P. 12(e), setting out the legal basis for her claims and alleging facts in compliance with Fed. R. Civ. P. 8(a).

In her Response to Defendants' Motion to Dismiss, Plaintiff claims the passengers on her bus plotted against her so that they could make a "YouTube" video, and she contends she did not receive a fair investigation from Union or Greyhound Lines [ECF No. 31]. Plaintiff alleges fraudulent misrepresentation and failure to investigate, and she contends unfair practices have been brought against her. She claims, prior to his death, Union's vice president made a determination that her case should be set for arbitration, but her case was left unattended after he died. According to Plaintiff, one year after her termination, another driver, experiencing problems with her passengers, pulled over in Sikeston, Missouri, and called her husband, who came and picked her up. Plaintiff reports this driver left the bus and her passengers on the side of the road. Plaintiff contends Defendants compared her case with the driver who abandoned her bus, and decided Plaintiff's case was not worth arbitrating. Plaintiff further claims to be unaware of any accusations she had locked passengers on the bus, turned up the heat, and left them. She says that she was told she was being terminated for acting unprofessionally, and she claims that the "it was all a lie."

In their Reply, Defendants contend that Plaintiff's response is "little more than a rehash of the same unsupported and conclusory allegations stated in her Complaint." [ECF No. 32 at 3]. They argue her Response differs from her Complaint only in that her Response includes a

6

"newly-born" and insufficiently pleaded, fraudulent misrepresentation claim, and compares her incident to an alleged incident involving another driver that occurred one year later. They argue that Plaintiff's failure to address their substantive arguments warrants dismissal of her claims with prejudice.

Defendants argue that Plaintiff's Title VII claim should be dismissed for failure to exhaust her administrative remedies because she failed to assert a Title VII violation in the administrative charge. In her MCHR Charge, Plaintiff indicated she was alleging discrimination based on "other," and, in describing the particulars of the discrimination, she merely alleged that she believed Union failed to adequately represent her because, after Union represented her during three grievance steps and informed her that her grievance was going to be referred to arbitration, she was told, approximately eighteen months after filing her initial grievance, that her matter would not proceed to arbitration [ECF No. 1-1 at 2].

Exhaustion of administrative remedies is central to Title VII's statutory scheme. *Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir. 1996). Exhaustion requires: 1) timely filing of an EEOC charge; and 2) receipt of a "right to sue" letter. *Id.* at 684. "The proper exhaustion of administrative remedies gives the plaintiff a green light to bring her employment-discrimination claim, along with allegations that are 'like or reasonably related' to that claim, in federal court." *Id.* As noted by Defendants, Plaintiff's MCHR Charge contained no reference to her race or to discrimination based on race [ECF No. 1-1 at 2]. Nor did her MCHR Charge name or mention Hamilton. Thus, Defendants' argument that Plaintiff's Title VII claim should be dismissed for failure to exhaust her administrative remedies, is well-taken. *See Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 949 (8th Cir. 2011). Furthermore, as discussed below, Plaintiff's

7

Complaint should be dismissed, in its entirety, for failure to state a claim upon which relief may relief can be granted. *See* Fed. R. Civ. P. 12(b)(6)

The Eighth Circuit has recognized Title VII sex and race discrimination claims against a union based on violation of an alleged duty of fair representation. *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 833 (8th Cir. 2002) ("When the employer investigates a sexual harassment claim by one union member against another, the union has a statutory duty to fairly represent both in their disciplinary dealings with the employer.")  "A labor organization is liable for an employer's discrimination in the workplace if it causes or attempts to cause the employer to discriminate; or if the union 'purposefully acts or refuses to act in a manner which prevents or obstructs a reasonable accommodation by the employer'; or if the union 'pursue[s] a policy of rejecting disparate-treatment grievances' meant to vindicate employee rights protected by Title VII." *Id*. at 832 (internal citations omitted).

When determining whether a complaint contains sufficient factual matter, accepted as true, to state a facially plausible claim to relief, the court's inquiry begins by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-79.  Legal conclusions may provide the framework of a complaint, but the conclusions must be supported by well-pleaded factual allegations. *Id.* After careful review of Plaintiff's Complaint and submitted exhibits, and accepting as true all well-pleaded allegations, the Court finds that Plaintiff's Complaint fails to state a claim upon which relief may be granted. *See Young*, 244 F.3d at 627.

To prevail on her breach-of-duty-fair-representation claim, Plaintiff must establish a prima facie Title VII case against Union, showing that : 1) Union breached its duty of fair representation; and 2) its breach was motivated by a discriminatory animus such as race, sex,

8

color, religion, or national origin.  *Carter v. United Food & Commercial Workers, Local No. 789*, 963 F.2d 1078, 1082 (8th Cir. 1992).

A union breaches its duty of fair representation only when its conduct is arbitrary, discriminatory, or in bad faith.  *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).  Establishing that a union failed in its duty of fair representation by failing to pursue a matter to arbitration is an especially difficult task; merely demonstrating that the union erred in its decision, or that its decision was negligent is not enough.  *Smith v. McDonnell Douglas Corp.*, 107 F.3d 605, 607 (8th Cir. 1997).  Where the union does not "play favorites among its members" and "exercises its discretion in good faith and with honesty or purpose, a 'wide range of reasonableness must be allowed.'"  *Id.* at 607-08 (internal quotations and citations omitted).

Plaintiff's pleadings allege that Greyhound terminated Plaintiff, an African American, for handling the bus incident in an unprofessional manner, and for being less than truthful about the incident when she later was interviewed about it.  The Complaint further alleges that Plaintiff filed a grievance of Greyhound's termination decision with Union, and that her union steward unsuccessfully represented her during three grievance steps, including one in which a video of the bus incident was played.  In her Complaint, Plaintiff further claims that a union representative told her that her grievance was going to be referred to arbitration, but that, after the union vice-president, who had been working on her case, died, Plaintiff received no information when she called her union representative.  Plaintiff alleges that when she called Hamilton on July 9, 2012, to determine why her case was not going to be arbitrated, Hamilton did not provide her with a good reason.  The Complaint additionally claims that Hamilton sent a letter to Plaintiff following their meeting, stating that Union's executive board voted not to proceed with her grievance, after lengthy deliberation, and upon advice from Union's attorney.  The gravamen of Plaintiff's

9

Complaint is that Union failed in its duty of fair representation by failing to pursue Plaintiff's matter to arbitration.

The Court finds that Plaintiff's pleadings fail to sufficiently allege facts, taken as true and liberally construed in her favor, that would establish a prima facie case for a violation of the duty of fair representation under Title VII.  The well-pleaded allegations do not establish that Union's conduct was arbitrary, discriminatory, or in bad faith.  Rather, the allegations in Plaintiff's Complaint and exhibits, accepted as true, show that Union exercised its discretion in good faith and with honest and purpose, when it determined that Plaintiff's matter should not be arbitrated.

First, it was entirely reasonable for Union to determine that the arbitrator would not believe Plaintiff, as the testimony of the responding police officer, other witnesses, and, evidently, the video, directly contradict her claims. Although Plaintiff, in her Response, claims to be unaware her passengers accused her of turning up the heat, locking them in the bus, and leaving them, her Complaint and exhibits reveal that she was informed of these allegations when she was interviewed following the incident, and that she denied their veracity.  Plaintiff's filings also show that the police officer, who responded to a call about the incident, reported that Plaintiff's passengers were on the bus, the door was locked, and the bus was very hot when he arrived on the scene.  Plaintiff contends that she did not receive a fair investigation from her employer or Union, and asserts that "it was all a lie."  However, Plaintiff also claims that her passengers plotted against her so that they could make a "YouTube" video, which leads to the reasonable inference that the video does not portray her actions in a favorable light, but rather, supports the passengers' claims. The allegations in Plaintiff's Complaint and exhibits do not indicate how Union's investigation was unfair, as the pleadings identify no witnesses that would corroborate Plaintiff's version of the bus incident, or that would discredit the police officer's

report.  Furthermore, Union represented Plaintiff during three grievance steps, albeit unsuccessfully, before its Board voted not to arbitrate her matter.  Plaintiff asserts that she was not kept apprised of the status of her case after the death of Union's vice president, and that Hamilton failed to give her a good reason for the Unions decision not to refer her grievance to arbitration.  Plaintiff's contentions of insufficient attentiveness, alone, do not establish a violation of the duty of fair representation.  *See Smith*, 107 F.3d at 607-09.  The Court finds that Plaintiff has not alleged facts sufficient to establish Union failed in its duty of fair representation by failing to pursue the matter to arbitration.

Moreover, even if Plaintiff's Complaint had sufficiently alleged facts, taken as true, that would state a plausible claim for a violation of the duty of fair representation, the Complaint alleges no facts that would allow the Court reasonably to infer that Union did not arbitrate her grievance because of her race, or any other protected basis, or that Union or Hamilton are liable for any alleged misconduct.  In conclusion, Plaintiff has failed to allege any facts establishing that Union acted with a race-based animus.  The Court finds that Plaintiff's well-pleaded allegations, taken as true and liberally construed in her favor, fail to establish a prima facie case for a violation of the duty of fair representation under Title VII.  *See Carter*, 963 F.2d at 1082.

Plaintiff's Complaint fails to state a claim upon which relief may be granted.  The Court will grant Defendant's Motion to Dismiss.

### IV.     CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that  Defendants Amalgamated Transit Union Local 1700's and Bruce Hamilton's Motion to Dismiss [ECF No. 27] is **GRANTED**.

11

**IT IS FURTHER ORDERED** that Plaintiff's Complaint [ECF No. 1] is **DISMISSED with prejudice**.

Dated this  16th  day of August, 2013.

                                              E. RICHARD WEBBER
                                              SENIOR UNITED STATES DISTRICT JUDGE